**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-25510-FAM**

JIRANDY LAHITTE, VANNESSA LOUCHART
BUSTAMANTE, MARCOS LOPEZ, and
CRYSTAL SALDANA, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

VANGUARD PARKING SOLUTIONS INC.
and T2 SYSTEMS, INC.,

      Defendants.

_____/

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Jirandy Lahitte ("Lahitte"), Vannessa Louchart Bustamante ("Louchart"), Marcos Lopez ("Lopez"), and Crystal Saldana ("Saldana") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, sue Defendants Vanguard Parking Solutions Inc. ("Vanguard") and T2 Systems, Inc. ("T2 Systems") (collectively, "Defendants") for violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA"), and allege as follows upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences and, as to all other matters, upon information and belief, including investigation by counsel:

**PRELIMINARY STATEMENT**

1.    This is a putative class action seeking statutory damages, declaratory relief, and permanent injunctive relief against Defendants for violations of the DPPA by knowingly obtaining, disclosing, and/or using personal information from a motor vehicle record for a purpose not permitted.

2. Vanguard is a private parking monitoring and enforcement vendor retained by property owners and parking operators to monitor and enforce parking at private parking facilities in Florida and around the country. Vanguard is a private, for-profit company, not a governmental agency, and does not act on behalf of any governmental agency when it monitors parking or issues parking notices.

3. Upon information and belief, Vanguard does not own or lease the private garages and lots where it enforces parking. Rather, Vanguard is retained by the properties' owners and primary parking operators to provide back-end enforcement, notice, and collections services for alleged parking violations. Vanguard is not itself the owner or operator of the private parking facilities at issue.

4. As part of its enforcement practices, Vanguard uses automated license plate recognition ("ALPR") technology and related software to monitor vehicle entry and exit and to generate mailed notices resembling parking tickets.

5. T2 Systems is a parking-technology and enforcement services provider that offers integrated enforcement, citation-management, and payment-processing platforms, including registered-owner retrieval and letter-fulfillment services used by private parking operators throughout the United States, including but not limited to Vanguard.

6. T2 Systems is likewise a private, for-profit company, not a governmental agency or arm of any governmental agency.

7. Upon information and belief, Vanguard utilizes T2 Systems' enforcement and citation-management products to feed license plate data into T2 Systems' platforms, which then request and retrieve registered-owner information from motor vehicle record databases, and to generate and mail parking notices.

8.      In violation of the DPPA, Defendants knowingly and without consent obtained or caused to be obtained Plaintiffs' and the Class Members' personal information, including their names and home addresses, from a "motor vehicle record" within the meaning of 18 U.S.C. § 2725(1) (including state motor-vehicle registration records) by matching license plates captured by ALPR cameras to state Department of Motor Vehicles ("DMV") records, and then disclosed and/or used that information to mail, or to have mailed, private parking invoices and related communications to Plaintiffs' and the Class Members' homes for purposes not permitted by 18 U.S.C. § 2721(b).

9.      Defendants' DPPA violations caused Plaintiffs and the Class Members concrete harm, including a statutory invasion of privacy and loss of control over sensitive personal information. Plaintiffs and the Class Members also spent time and effort reviewing the mailings, researching Defendants and their operations, attempting to understand why Defendants had their names and home addresses and how the data was obtained, and gathering and preserving records, and they experienced resulting anxiety and emotional distress.

10.      Plaintiffs seek, on behalf of themselves and each member of the proposed Class, statutory damages under the DPPA in the amount of at least $2,500 per violation, reasonable attorneys' fees and costs, and such other relief as the Court determines appropriate, including a permanent injunction pursuant to 18 U.S.C. § 2724(b)(4) prohibiting Defendants from obtaining, disclosing, or using personal information from any motor vehicle record for any non-permitted purpose and requiring Defendants to identify and delete all such information in their possession, custody, or control, and to request deletion by any downstream recipients.

## PARTIES

11.      Plaintiff Lahitte is an individual residing in Miami-Dade County, Florida.

12.    Plaintiff Louchart is an individual residing in the District of Columbia.

13.    Plaintiff Lopez is an individual residing in Walton County, Florida.

14.    Plaintiff Saldana is an individual residing in Hidalgo County, Texas.

15.    Vanguard is a corporation organized under the laws of Florida with its principal place of business in Hollywood, Florida.

16.    T2 Systems is a corporation organized under the laws of Indiana with its principal place of business in Indianapolis, Indiana.

## JURISDICTION AND VENUE

17.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the DPPA.

18.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because, on information and belief, the proposed Class consists of 100 or more members, at least one member of the proposed Class is a citizen of a state different from at least one Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

19.    This Court has personal jurisdiction over Vanguard because Vanguard is organized under the laws of Florida, maintains its principal place of business in Florida, conducts substantial and not isolated business in Florida, including within this District, and the wrongful conduct giving rise to Plaintiff Lahitte's claims was directed from and into this District.

20.    This Court has personal jurisdiction over T2 Systems because it conducts substantial and not isolated business in Florida and, on information and belief, purposefully directs its conduct into this District by partnering with Vanguard to obtain and use DMV-sourced personal

information for vehicles in Miami-Dade County and to cause private parking invoices to be mailed into this District, including to Plaintiff Lahitte.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims of at least one named Plaintiff occurred in Miami-Dade County, Florida, including the use of ALPR or similar technology to capture Plaintiff Lahitte's license plate, the obtainment, disclosure, and/or use of personal information, and Plaintiff Lahitte's receipt of the mailing at his home address.

22. All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## THE DPPA

23. The DPPA was enacted in 1994 to protect the privacy of licensed drivers and to limit misuse of personal information contained in motor vehicle records. The DPPA establishes a narrow list of enumerated permissible uses and imposes civil liability for knowingly obtaining, disclosing, or using such information for a purpose not permitted under the DPPA. *See generally* 18 U.S.C. §§ 2721-2725.

24. Specifically, the DPPA provides: "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724(a).

25. "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

26.     "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

27.     The DPPA provides a narrow set of permissible uses of personal information, enumerated in 18 U.S.C. § 2721(b), and also restricts resale and redisclosure of personal information. 18 U.S.C. § 2721(c).

28.     The DPPA defines "express consent" to mean consent in writing, including consent conveyed electronically that bears an electronic signature. 18 U.S.C. § 2725(5).

29.     The DPPA authorizes actual damages, liquidated damages of at least $2,500 per violation, punitive damages for willful or reckless disregard of the law, an award of reasonable attorneys' fees and other litigation costs, as well as equitable relief. 18 U.S.C. § 2724(b)(1)-(4).

## FACTS

### Vanguard and T2 Systems' parking-enforcement practices

30.     Vanguard monitors and enforces parking rules at private parking facilities in Florida and other states, including the garages located at 2903 McFarlane Road in Miami, Florida, and 1515 New York Ave NE in Washington, D.C., and the parking lots located at 900 Central Avenue in St. Petersburg, Florida, and 1029 Annunciation Street in New Orleans, Louisiana, on behalf of the properties' owners and primary parking operators. These facilities are privately owned and are not municipal, county, or state parking facilities.

31.     Vanguard uses ALPR technology and related enforcement systems that capture vehicle license plates as vehicles enter and exit garages and lots.

32.     When Vanguard or its systems contend a parking charge is due, Vanguard obtains, or causes to be obtained, the vehicle owner's name and home address from a motor vehicle record

for the non-permitted purpose of facilitating private, after-the-fact invoicing and collection, and discloses or uses that information to cause a private parking invoice to be mailed, either by Vanguard itself or by a mailing vendor acting at Vanguard's direction.

33. The resulting notice is a private parking invoice, not a traffic citation or ticket issued under any state or local law, and it is not filed with or processed by any court, clerk, or governmental agency.

34. Upon information and belief, when a vehicle is flagged as allegedly owing a private parking charge, Vanguard and T2 Systems rely on motor vehicle records as the initial and primary source of the registered owner's name and home address. Vehicle owners are not required, as a condition of parking, to provide their names, home addresses, or other personal identifying information to Vanguard at the point of entry, at exit, or through any on-site kiosk, attendant, or mobile application.

35. Defendants do not use DMV-sourced personal information to verify, correct, or supplement personal information previously provided directly by the driver or registered owner. Instead, Defendants obtain that DMV-sourced personal information for the first time from motor vehicle records and then use it to create new enforcement records and to mail private parking invoices, follow-up notices, and collection letters to vehicle owners' homes.

36. Vanguard advertises that it partners with T2 Systems, a parking-technology company that markets parking enforcement services, including citation processing, registered-owner retrieval, letter services, and citation collection services to parking operators.

37. T2 Systems promotes its "Retrieval of Vehicle Registration" service, which it states operators can use for "quickly locating the registered owner information for individuals responsible for unpaid parking tickets."

38.     T2 Systems further promotes its "Letter Fulfillment" services, through which T2 Systems utilizes motor vehicle records to generate, print, and mail parking violation notices to registered vehicle owners at their home addresses.

39.     Upon information and belief, Vanguard engages T2 Systems to perform registered-owner retrieval and letter fulfillment services in connection with private parking charges issued at Vanguard-operated garages and lots, including the garages located at 2903 McFarlane Road in Miami, Florida, and 1515 New York Ave NE in Washington, D.C., and the parking lots located at 900 Central Avenue in St. Petersburg, Florida, and 1029 Annunciation Street in New Orleans, Louisiana.

40.     Upon information and belief, Vanguard regularly captures license plates with ALPR technology or similar systems and then obtains, or causes to be obtained, personal information from motor vehicle records, which Vanguard uses or discloses to generate and mail, or to have mailed, private parking invoices, notices, or related communications, without a permissible purpose under the DPPA, at multiple garages and lots in Florida and in other states.

41.     Upon information and belief, through its citation-processing and registered-owner retrieval products and services, T2 Systems regularly receives from Vanguard and other private parking operators license plate data for vehicles alleged to owe private parking charges and then obtains, or causes to be obtained, personal information from motor vehicle records—including registered owners' names and home addresses—which Vanguard and other parking operators use or disclose, or cause to be used or disclosed, to generate and mail, or to have mailed, private parking invoices, delinquency notices, and related communications on behalf of Vanguard and other private parking operators, without a permissible purpose under the DPPA, at multiple garages and lots in Florida and in other states.

42. Upon information and belief, Defendants mail, or cause to be mailed, such private parking invoices, generated using personal information obtained from motor vehicle records, to vehicle owners who reside outside Florida and Washington, D.C.

**Common harm and ongoing risk**

43. Defendants' conduct and DPPA violations caused Plaintiffs and the Class Members the harms described in paragraph 9 and in the Plaintiff-specific allegations below.

44. Upon information and belief, Vanguard continues to enforce parking at the garages and lots described above, and other nearby facilities, using ALPR technology and DMV lookups utilizing T2 Systems' services, and Defendants retain Plaintiffs' license plate and personal information, including their names and home addresses, in their enforcement databases for continued use or disclosure, creating an ongoing risk of repeated privacy violations.

45. Plaintiffs' claims under the DPPA arise from Defendants' independent decision to obtain, disclose, and/or use personal information from motor vehicle records and do not depend on the existence or enforceability of any alleged parking contract.

46. Upon information and belief, Vanguard also regularly transmits personal information obtained from motor vehicle records related to unpaid accounts to third-party collection vendors for additional collection activity.

47. Upon information and belief, despite mailing large volumes of private parking invoices and follow-up notices, Defendants have never filed a civil lawsuit or initiated any arbitration proceeding to enforce any alleged parking contract or collect any alleged parking charge reflected in their notices.

48. Instead, Defendants use DMV-sourced personal information solely to send standardized private parking invoices, follow-up notices, and collection letters to vehicle owners'

homes, and to threaten additional fees and collection activity, in an effort to coerce payment without resort to any court or arbitral forum.

49.     Defendants' obtainment, disclosure, and use of DMV-sourced personal information are not undertaken to file, prosecute, defend, or resolve any specific civil, criminal, administrative, or arbitral proceeding, including any investigation in anticipation of litigation, service of process, or enforcement of judgments or orders.

50.     Rather, Defendants obtain and use such information automatically whenever a vehicle is flagged as allegedly owing a private parking charge, regardless of whether any lawsuit, arbitration, or other proceeding exists, is contemplated, or is ever pursued.

**<u>Common allegations concerning the named Plaintiffs</u>**

51.     None of the named Plaintiffs provided their names, home addresses, or other personal information to Vanguard or T2 Systems in connection with the parking facilities at issue, whether through an on-site kiosk, attendant, mobile application, or website.

52.     None of the named Plaintiffs saw, read, or agreed to any posted "parking contract" or other written terms disclosing that Vanguard and/or T2 Systems would obtain their personal information from state motor vehicle records or purporting to waive rights under the DPPA.

53.     None of the named Plaintiffs authorized Vanguard or T2 Systems to obtain, disclose, or use their personal information from any motor vehicle record, and none provided "express consent" within the meaning of 18 U.S.C. § 2725(5).

54.     In particular, none of the named Plaintiffs were presented with or signed any written consent, or executed any electronic consent bearing an electronic signature, authorizing the release of DMV-sourced personal information to Vanguard, T2 Systems, or any of their vendors for billing, collection, or any other purpose.

**Plaintiff Lopez**

55.     On or about June 2024, Plaintiff Lopez briefly crossed through a private surface parking lot operated and enforced by Vanguard at 900 Central Avenue in St. Petersburg, Florida. He did not stop or park in the lot at any point.

56.     Plaintiff Lopez's vehicle merely entered and exited the lot twice that same day— each time for only a few seconds—as a means of reaching the opposite side of the street.

57.     Plaintiff Lopez did not pay for parking during the brief seconds he drove through the parking lot.  He did not interact with any on-site payment kiosk, attendant, or mobile application while he drove through the parking lot.

58.     Vanguard's ALPR system nevertheless recorded the first drive-through as the vehicle's "entry" and the second drive-through as the vehicle's "exit," treating the intervening period as a continuous parking stay even though Vanguard knew, through its ALPR data and recordings, that the vehicle spent only seconds in the lot on each pass-through.

59.     During the few seconds when Plaintiff Lopez drove through the parking lot, he did not see, read, or agree to any posted "parking contract" or other written terms. No one presented him with any document disclosing that Vanguard and/or T2 Systems would obtain his personal information from state motor vehicle records or otherwise, nor did anyone disclose any purported waiver of rights.

60.     Upon information and belief, based on that manufactured record and using Plaintiff Lopez's license plate, Vanguard—working in concert with T2 Systems and/or other agents or resellers with access to such records—obtained Plaintiff Lopez's personal information, including name and home address, from a motor vehicle record maintained by the Florida Department of Highway Safety and Motor Vehicles or another state motor vehicle agency, and used or disclosed

-11-

such information to mail, or directed T2 Systems and/or another vendor to mail, a private parking invoice to Plaintiff Lopez's residence demanding payment.

61.     After receiving the invoice in the mail, Plaintiff Lopez promptly contacted Vanguard to dispute the charge, explained that he never parked in the lot, and offered to provide dash-camera footage showing his vehicle simply drove through and immediately exited the parking lot. Vanguard nevertheless maintained the charge and threatened to send the alleged debt to collections.

62.     Plaintiff Lopez never provided his name, home address, or any other personal information to Vanguard or T2 Systems. Nor did he provide any such personal information to any attendant, kiosk, mobile application, or website associated with Vanguard, T2 Systems, or the parking lot.

63.     Plaintiff Lopez never authorized Vanguard or T2 Systems to obtain, disclose, or use his personal information from any motor vehicle record or otherwise, and he never provided "express consent" as defined by 18 U.S.C. § 2725(5). In particular, he did not sign any written consent or execute any electronic consent bearing an electronic signature authorizing Vanguard, T2 Systems, or their vendors to obtain or use DMV-sourced personal information for billing or collection purposes.

64.     Defendants knowingly obtained, disclosed, and/or used Plaintiff Lopez's personal information without his authorization or consent, and their obtainment, disclosure, and/or use of his personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

**Plaintiff Lahitte**

65.     Plaintiff Lahitte is paralyzed from the waist down, uses a wheelchair for mobility, and relies on his adapted vehicle and accessible private parking garages such as Vanguard's

Coconut Grove facility.

66.     On or about July or August 2025, Plaintiff Lahitte parked his vehicle in the parking garage located at 2903 McFarlane Road in Miami, Florida. Vanguard's enforcement systems at that garage captured the vehicle's license plate and recorded entry and exit times.

67.     Plaintiff Lahitte did not pay for parking at the time he parked in the garage. He did not interact with any on-site payment kiosk, attendant, or mobile application while he was in the garage, and he did not visit any Vanguard website, including any Vanguard payment portal, to pay for or dispute any alleged parking charge.

68.     When Plaintiff Lahitte entered and parked in the garage, he did not see, read, or agree to any posted "parking contract" or other written terms. No one presented him with any document disclosing that Vanguard and/or T2 Systems would obtain his personal information from state motor vehicle records or otherwise, nor did anyone disclose any purported waiver of rights.

69.     Upon information and belief, using Plaintiff Lahitte's license plate, Vanguard— working in concert with T2 Systems and/or other agents or resellers with access to such records— obtained Plaintiff Lahitte's personal information, including his name and home address, from a motor vehicle record maintained by the Florida Department of Highway Safety and Motor Vehicles or another state motor vehicle agency, and used or disclosed such information to mail, or directed T2 Systems and/or another vendor to mail, a private parking invoice to Plaintiff Lahitte's residence demanding payment.

70.     Plaintiff Lahitte never provided his name, home address, or any other personal information to Vanguard or T2 Systems. Nor did he provide any such personal information to any attendant, kiosk, mobile application, or website associated with Vanguard, T2 Systems, or the garage at 2903 McFarlane Road.

-13-

71.     Plaintiff Lahitte never authorized Vanguard or T2 Systems to obtain, disclose, or use his personal information from any motor vehicle record or otherwise, and he never provided "express consent" as defined by 18 U.S.C. § 2725(5). In particular, he did not sign any written consent or execute any electronic consent bearing an electronic signature authorizing Vanguard, T2 Systems, or their vendors to obtain or use DMV-sourced personal information for billing or collection purposes.

72.     Defendants knowingly obtained, disclosed, and/or used Plaintiff Lahitte's personal information without his authorization or consent, and their obtainment, disclosure, and/or use of his personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

73.     As a result, Plaintiff Lahitte faces a real and immediate risk of being subjected again to the same unlawful obtainment, disclosure, and/or use of his personal information when his vehicle is parked in lots and garages enforced by Vanguard, and from Defendants' ongoing retention and potential redisclosure of his personal information to third parties, including collection vendors, creating an ongoing risk of repeated privacy violations.

**Plaintiff Louchart**

74.     On or about September 21, 2024, Plaintiff Louchart parked in a parking garage operated and enforced by Vanguard, located at 1515 New York Ave NE in Washington, D.C. Plaintiff Louchart parked in this garage to shop at a Target connected to the garage.

75.     Plaintiff Louchart did not pay for parking at the time she parked in the garage. She did not interact with any on-site payment kiosk, attendant, or mobile application while she was in the garage.  In fact, the last time Plaintiff Louchart parked in the garage for shopping, garage parking was free for shoppers.

76. When Plaintiff Louchart entered and parked in the garage, she did not see, read, or agree to any posted "parking contract" or other written terms, or to any terms displayed on or near a parking barrier. No one presented her with any document disclosing that Vanguard and/or T2 Systems would obtain her personal information from state motor vehicle records or otherwise, nor did anyone disclose any purported waiver of rights.

77. Upon information and belief, using Plaintiff Louchart's license plate, Vanguard—working in concert with T2 Systems and/or other agents or resellers with access to such records—obtained Plaintiff Louchart's personal information, including name and home address, from a motor vehicle record maintained by the District of Columbia Department of Motor Vehicles or another state motor vehicle agency, and used or disclosed such information to mail, or directed T2 Systems and/or another vendor to mail, a private parking invoice to Plaintiff Louchart's residence demanding payment. She received the first invoice approximately two weeks after her September 2024 visit, received a second invoice approximately one week later, and even though she believed the charge was improper, she ultimately paid in order to be done with the matter.

78. Plaintiff Louchart never provided her name, home address, or any other personal information to Vanguard or T2 Systems. Nor did she provide any such personal information to any attendant, kiosk, mobile application, or website associated with Vanguard, T2 Systems, or the garage at 1515 New York Ave NE.

79. Plaintiff Louchart never authorized Vanguard or T2 Systems to obtain, disclose, or use her personal information from any motor vehicle record or otherwise, and she never provided "express consent" as defined by 18 U.S.C. § 2725(5). In particular, she did not sign any written consent or execute any electronic consent bearing an electronic signature authorizing Vanguard,

T2 Systems, or their vendors to obtain or use DMV-sourced personal information for billing or collection purposes.

80.     Defendants knowingly obtained, disclosed, and/or used Plaintiff Louchart's personal information without her authorization or consent, and their obtainment, disclosure, and/or use of her personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

**Plaintiff Saldana**

81.     On or about November 2025, Plaintiff Saldana parked in a parking lot operated and enforced by Vanguard, located at 1029 Annunciation Street in New Orleans, Louisiana.

82.     When Plaintiff Saldana entered and parked in the lot, she did not see, read, or agree to any posted "parking contract" or other written terms. No one presented her with any document disclosing that Vanguard and/or T2 Systems would obtain her personal information from state motor vehicle records or otherwise, nor did anyone disclose any purported waiver of rights.

83.     Upon information and belief, using Plaintiff Saldana's license plate, Vanguard— working in concert with T2 Systems and/or other agents or resellers with access to such records— obtained Plaintiff Saldana's personal information, including name and home address, from a motor vehicle record maintained by the Texas Department of Motor Vehicles or another state motor vehicle agency, and used or disclosed such information to mail, or directed T2 Systems and/or another vendor to mail, a private parking invoice to Plaintiff Saldana's residence demanding payment.

84.     Plaintiff Saldana never provided her name, home address, or any other personal information to Vanguard or T2 Systems. Nor did she provide any such personal information to any

attendant, kiosk, mobile application, or website associated with Vanguard, T2 Systems, or the lot at 1029 Annunciation Street.

85. Plaintiff Saldana never authorized Vanguard or T2 Systems to obtain, disclose, or use her personal information from any motor vehicle record or otherwise, and she never provided "express consent" as defined by 18 U.S.C. § 2725(5). In particular, she did not sign any written consent or execute any electronic consent bearing an electronic signature authorizing Vanguard, T2 Systems, or their vendors to obtain or use DMV-sourced personal information for billing or collection purposes.

86. Defendants knowingly obtained, disclosed, and/or used Plaintiff Saldana's personal information without her authorization or consent, and their obtainment, disclosure, and/or use of her personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

## CLASS ALLEGATIONS

### Proposed Class

87. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiffs seek to represent is defined as:

> **All persons in the United States whose personal information contained in a motor vehicle record was obtained, disclosed, and/or used by Defendants for purposes not permitted under the DPPA during the four-year period prior to the filing of this lawsuit through the date of class certification**.

88. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, and any of Defendants' officers, directors, affiliates, legal representatives, and employees, and any judge presiding over this matter and the members of their immediate families and judicial staff.

**Numerosity**

89.     The Class consists of hundreds, if not thousands, of members, and certainly more than forty, given Defendants' standardized practice of obtaining, disclosing, and/or using personal information obtained from a motor vehicle record and mailing private parking invoices at scale across multiple garages and lots in Florida and other states. Thus, joinder of all members is impracticable.

90.     Class Members can be identified through objective evidence, including Vanguard's enforcement logs, ALPR match logs, motor vehicle record access logs, T2 Systems' Retrieval of Vehicle Registration logs, mailing address files, and data from Vanguard's violations payment or appeals systems, as well as customer service and appeals databases. These sources provide common, centralized proof suitable for class-wide identification.

**Commonality/Predominance**

91.     The central question in this case is whether Defendants' standardized practice of obtaining, disclosing, and/or using personal information from motor vehicle records to pursue private parking charges, including by mailing private parking invoices and related communications and by transmitting personal information to third-party vendors for collection activity, violates the DPPA.

92.     There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members. Among them are:

      a.   whether Defendants knowingly obtained, disclosed, and/or used Plaintiffs' and the Class Members' personal information from a motor vehicle record;

      b.   whether any permissible use under 18 U.S.C. § 2721(b) applies to Defendants' conduct;

c.  whether Defendants are liable for damages under 18 U.S.C. § 2724(b) and, if so, the amount of such damages; and

d.  whether Defendants have acted or refused to act on grounds that apply generally to the Class such that injunctive relief is appropriate respecting the Class as a whole.

93.  The common questions in this case are capable of having common answers, are provable with common evidence, and Plaintiffs and the Class Members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

94.  Plaintiffs' claims are typical of those of the Class because Plaintiffs—like all members of the Class—had their protected personal information from motor vehicle records, maintained by a state motor vehicle department, obtained, used, and/or disclosed by Defendants for the same non-permitted purposes under the DPPA.

**Adequacy of Representation**

95.  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

**Superiority**

96.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3) because:

a.  Joinder of all Class Members would create extreme hardship and inconvenience for the affected Class Members, who reside throughout the United States;

-19-

b.  Individual claims by Class Members are impracticable because the costs to pursue individual claims exceed the value of what any one Class Member has at stake. As a result, individual Class Members have no strong interest in prosecuting and controlling separate actions;

c.  The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

d.  Individual suits would not be cost effective or economically maintainable as individual actions;

e.  The requested injunctive relief is indivisible and will provide uniform relief by prohibiting Defendants from obtaining, disclosing, and/or using personal information from a motor vehicle record absent a permissible purpose, and by requiring the purge of such personal information stored in Defendants' records; and

f.  The action is manageable as a class action.

## COUNT I
### Violation of Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725
### On Behalf of Plaintiffs and the Class

97.  Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 96 as if fully set forth herein.

98.  Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a).

99.     "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

100.     "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

101.     Plaintiffs and the Class Members are "persons" as defined by 18 U.S.C. § 2725(2) and are "individual[s] to whom the information pertains" within the meaning of 18 U.S.C. § 2724(a).

102.     Plaintiffs and the Class Members' names and addresses are "personal information" under the DPPA.

103.     Defendants knowingly obtained, disclosed, and/or used Plaintiffs' and the Class Members' personal information from motor vehicle records, directly or through agents or resellers with access to such records, without consent or authorization of any kind, including without any "express consent" within the meaning of 18 U.S.C. § 2725(5).

104.     Defendants violated the DPPA by knowingly obtaining, disclosing, and/or using Plaintiffs' and the Class Members' personal information from motor vehicle records for a purpose not permitted under the DPPA, including by cross-referencing license plates to obtain registrants' names and home addresses from a motor vehicle record and using that information to pursue private parking charges, such as by mailing or causing to be mailed private parking invoices, delinquency notices, and related communications to Plaintiffs' and the Class Members' homes.

105. No permissible use under 18 U.S.C. § 2721(b) applies to Defendants' conduct, and Plaintiffs and the Class Members did not provide "express consent" as defined in 18 U.S.C. § 2725(5). Defendants' conduct was not for use by a government agency, not related to motor-vehicle safety or recall, not for insurance underwriting or claims, not for fraud prevention, and not for any other enumerated purpose. Nor did Defendants obtain, disclose, or use DMV-sourced personal information "in connection with any civil, criminal, administrative, or arbitral proceeding," including any "investigation in anticipation of litigation," "service of process," or "execution or enforcement of judgments and orders," within the meaning of 18 U.S.C. § 2721(b)(4).

106. Defendants' conduct also was not "specifically authorized under the law of the State" within the meaning of 18 U.S.C. § 2721(b)(14), because no state statute authorizes Vanguard or T2 Systems, in their role as private enforcement and collections vendors, to obtain, disclose, or use DMV-sourced personal information to pursue private parking charges.

107. As a result of Defendants' DPPA violations, Plaintiffs and the Class Members suffered the harms alleged in paragraphs 9, 43–44, and 55–86, including concrete injuries sufficient to confer Article III standing.

108. Plaintiffs face a real and immediate threat of repeated injury. Vanguard and T2 Systems retain Plaintiffs' personal information in their systems for further disclosure or use, including potential transmission of their personal information to third-party collection vendors for additional collection efforts, and continue to operate the same ALPR-based enforcement and DMV lookup practices challenged in this action.

109. Defendants maintain an ongoing policy and practice of obtaining, disclosing, and/or using personal information from motor vehicle records to mail, or cause to be mailed, private

parking invoices and related communications, and Defendants retain Plaintiffs' personal information in their records for further use or disclosure, including by transmitting personal information relating to unpaid accounts to third-party agents and collection vendors for further collection activity.

110.   Defendants' conduct was willful and in reckless disregard of the DPPA. Defendants designed and implemented a standardized program to obtain, use, and disclose DMV-sourced personal information to pursue private parking charges despite the absence of any permissible purpose under 18 U.S.C. § 2721(b), and continued that practice even after receiving disputes and complaints, including Plaintiff Lopez's dispute explaining that he never parked in the lot.

111.   Monetary relief alone cannot prevent future obtainment, disclosure, redisclosure, or use of Plaintiffs' personal information or require deletion of data already in Defendants' systems and records and in the hands of third-party collection vendors and other recipients. Absent injunctive relief, Defendants will remain free to continue obtaining, retaining, and redisclosing Plaintiffs' and the Class Members' personal information in violation of the DPPA.

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, respectfully request the following relief:

a.   An order certifying this case as a class action on behalf of the Class as defined above, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

b.   An order declaring that Defendants' conduct violates the DPPA;

c.   An award of actual and statutory damages of at least $2,500 for each violation of the DPPA for Plaintiffs and each member of the Class, pursuant to 18 U.S.C. § 2724(b)(1);

d.        An award of punitive damages for willful or reckless disregard of the DPPA, pursuant to 18 U.S.C. § 2724(b)(2);

e.        An injunction permanently enjoining Defendants, and those in active concert with them:

(i)     from obtaining, disclosing, or using personal information from a motor vehicle record to pursue private parking charges, including by mailing or causing to be mailed private parking invoices, delinquency notices, or related communications, or for any other purpose not permitted under 18 U.S.C. § 2721(b);

(ii)    requiring the identification and deletion of all personal information obtained, directly or through an agent, reseller, or other third party, from a motor vehicle record relating to Plaintiffs and the Class for non-permitted purposes; and

(iii)    requiring Defendants to notify and request that all mailing, collection, and other vendors and recipients of such personal information delete it and certify deletion to the Court within a reasonable time period.

f.        An award of reasonable attorney's fees and costs, pursuant to 18 U.S.C. § 2724(b)(3);

g.        An award of pre-judgment and post-judgment interest as allowed by law; and

h.        Such further and other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

-25-

Dated: December 5, 2025

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130

By: *s/Charles M. Garabedian*
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
victor@mfh.law
charles@mfh.law
eservice@mfh.law

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF

docket on December 5, 2025, which served same electronically upon all counsel of record.

By: *s/ Charles M. Garabedian*